Filed 9/22/25  Marmolejo v. Fleet Capital CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DIANA CULKIN MARMOLEJO, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> FLEET CAPITAL, INC. et al., <br><br> Defendants and Respondents. | B343353 <br><br> (Los Angeles County <br> Super. Ct. No. 21PSCV00617) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Salvatore Sirna, Judge.  Affirmed.

Diana Culkin Marmolejo, in pro. per., for Plaintiff and Appellant.

The Ryan Firm, Timothy M. Ryan, Andrew J. Mase and Katherine K. Meleski for Defendants and Respondents Fleet Capital, Inc., Inco Builders, Inc., and Sam Ostayan.

Law Offices of Martin McGuinn, Martin T. McGuinn; Coughlin Law Firm and Sean C. Coughlin for Defendant and Respondent Best Alliance Foreclosure and Lien Services Inc.

———————————

# INTRODUCTION

After plaintiff and appellant Diana Culkin Marmolejo (Marmolejo), also known as Diana Jannette Marmolejo Corona, failed to make an installment payment on a promissory note secured by land she owned in Covina, California, defendant and respondent Fleet Capital, Inc. (Fleet) sold the property pursuant to a power of sale clause in the deed of trust. Marmolejo later sued Fleet and other defendants, challenging the foreclosure as wrongful.

The trial court granted summary judgment against Marmolejo, agreeing with the defendants that it was undisputed she defaulted on the note, that defendants complied with the nonjudicial foreclosure statutes, and that Marmolejo did not tender payment as necessary to maintain causes of action for wrongful foreclosure and quiet title.

Marmolejo now appeals, asserting triable issues of fact should have precluded summary judgment against her. As we explain below, she submitted no admissible evidence demonstrating any disputed issues of material fact, and we therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Summary

In 2018, M. L. Culkin Construction Company, Inc. (Culkin Construction) purchased a parcel of undeveloped land in Covina from Kevin Chuan-An Kang and Jennifer C. Lee. In connection with the purchase, on April 10, 2018, Culkin Construction entered into a promissory note to pay $37,500 in principal, "with interest from May 2, 2018 on unpaid principal at a rate of [5] percent per annum, payable in monthly installments of

interest only, or more on the same day of each month, beginning on the 2nd of June 2018, and continuing until the 2nd day of August 2018, at which time the entire principal balance together with interest due thereon, shall become due and payable." (Boldface and underscoring omitted.)

The note permitted the lender to accelerate the amounts due upon default or transfer of the property. It also stated the note "[wa]s subject to [s]ection 2966 of the Civil Code,"[1] even though that section applies only to lots containing "a dwelling for not more than four families" (§ 2956; see generally 5 Miller & Starr, Cal. Real Estate (4th ed. 2025) § 4:66 (Miller & Starr)), and further stated that section 2966 "provides that the holder of this [n]ote shall give written notice to the [t]rustor, or his successor in interest, of prescribed information at least [90] days and not more than [150] days before any balloon payment is due."

Culkin Construction also executed a second deed of trust (the second deed of trust) in favor of Safe Harbor Exchange, Inc., (Safe Harbor) for the benefit of Kang and Lee. Progressive Escrow, Inc. was identified as the trustee. The grant deed and second deed of trust were recorded on May 2, 2018, and each listed an address in Downey (the Downey address) as Culkin Construction's address.

On January 14, 2019, Culkin Construction recorded a grant deed transferring the property to Marmolejo. The grant deed did not state Marmolejo's address but listed the Downey address for Michael Culkin, the agent who executed documents on behalf of Culkin Construction.

---

[1] Unspecified statutory references are to the Civil Code.

3

On August 19, 2020, Kang and Lee assigned the second deed of trust and the related note to Fleet, who thus became the beneficiary of the second deed of trust. Fleet recorded the assignment on November 30, 2020. The assignment did not indicate any agreement to forbear on collecting payments due under the note.

On February 11, 2021, Fleet substituted defendant Best Alliance Foreclosure and Lien Services Corp. (Best) as trustee of the second deed of trust. Defendant Sam Ostayan signed the substitution on behalf of Fleet. On February 17, 2021, at 8:00 a.m., Best recorded the substitution.

At the same time Best recorded the substitution, it also recorded a notice of default and election to sell under the second deed of trust (the notice of default). The notice stated, "If your property is in foreclosure because you are behind in your payments . . . you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice). [¶] This amount is $7,357.51 as of [February 10, ]2021 and will increase until your account becomes current." (Boldface and capitalization omitted.) It also stated, "Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made."

4

The notice of default identified the default as the failure to pay "installment of principal and/or interest which became due [June 2, ]2018; plus all late charges and advances as set forth in said note and [second] deed of trust, plus all subsequent installments of principal, interest, default interest, . . . and indebtedness as they become due . . . .  Reinstatement will require all senior liens . . . to be in a current and paid status . . . ." (Boldface and capitalization omitted.)  The notice further stated that Fleet "does hereby declare all sums secured [by the second deed of trust] immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby."  Ostayan signed the notice on behalf of Fleet.

According to a declaration of Best's employee, Luis Alvarado, Best mailed the notice of default on February 19, 2021. Marmolejo's various complaints alleged the notice of default was not mailed to her until April 28, 2021, but as explained below, she never submitted any evidence in support of that claim.

On May 20, 2021, Best recorded a notice of trustee's sale, which was scheduled for June 10, 2021.

The trustee's deed upon sale, executed by Best and recorded on June 22, 2021, stated that the amount of unpaid debt at the time of foreclosure was $49,068.15 (this amount does not include arrears on the first position lien, which also appears to have been in default).  The amount paid by the highest bidder, defendant Inco Builders, Inc. (Inco) was $126,000.  It is undisputed that Ostayan is an officer of Fleet and of Inco.

The trustee's deed upon sale also included the following recitals:  "Trustee having complied with all applicable statutory requirements of the State of California and performed all duties

5

required by the [d]eed of [t]rust including sending a [n]otice of [d]efault and [e]lection to [s]ell within [10] days after its recording and a [n]otice of [s]ale at least [20] days prior to the [s]ale [d]ate by certified mail, . . . to each person entitled to notice in compliance with . . . [section] 2924b"; and "[a]ll requirements per California [s]tatutes regarding the mailing . . . of copies of [n]otice of [d]efault and [e]lection to [s]ell under [d]eed of [t]rust and [n]otice of [t]rustee's [s]ale, and the posting of copies of [n]otice of [t]rustee's [s]ale have been complied with."

## B. Procedural Summary

### 1. *The Complaint, First Amended Complaint, and Pleading Challenges*

On July 30, 2021, Marmolejo sued Fleet, Best, and Inco. On October 7, 2022, Marmolejo filed a first amended complaint (FAC) against the same three defendants plus Ostayan. By then, Best had nonmonetary status in the litigation,[2] and we

---

[2] On September 3, 2021, Best filed a declaration of nonmonetary status under section 2924*l*, which provides that if there is no objection to the declaration within 15 days, "the trustee shall not be required to participate any further in the action." (§ 2924*l*, subd. (d).) The record does not reveal any such objection. On April 24, 2023, after Best was again named as a defendant in the second amended complaint, Best filed a stipulation and order declaring its nonmonetary status in the litigation. Over a year later, Marmolejo moved to quash Best's nonmonetary status, and, on August 12, 2024, the court denied the motion. Marmolejo's notice of appeal did not identify this August 12, 2024 order as part of her appeal and, thus, we lack jurisdiction to review it. (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170.) Even if we considered this order to be incorporated

6

hereinafter refer to Fleet, Inco, and Ostayan as the Fleet defendants. The Fleet defendants demurred to all causes of action against them, and, on January 5, 2023, the court sustained the demurrer in its entirety with leave to amend.

2. *The Second Amended Complaint and Pleading Challenges*

a. <u>The Second Amended Complaint</u>

On February 24, 2023, Marmolejo filed a verified second amended complaint (SAC) against Fleet, Best, Inco, and Ostayan for: (1) violation of nonjudicial foreclosure statutes (against Fleet, Best, and Ostayan), (2) wrongful foreclosure (against all defendants), (3) quiet title (against Fleet, Best, and Inco), (4) promissory estoppel (against Fleet, Best and Ostayan), (5) breach of the covenant of good faith and fair dealing (against Fleet, Best, Ostayan), (6) violation of the Rosenthal Fair Debt Collection Practices Act (§ 1788 et seq.) (against all defendants), (7) unfair business practices (against all defendants), and (8) declaratory relief (against all defendants).

The SAC alleged that in April 2018, Marmolejo's husband was the president of Culkin Construction, and the company purchased a parcel of "undeveloped land" from Kang and Lee. As part of the purchase, Culkin Construction executed a note in the principal amount of $37,500 secured by a second deed of trust on

into the judgment such that we had jurisdiction, Marmolejo forfeited the issue by not raising it in her opening brief. (*Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1064, fn. 2 [forfeiting arguments raised for the first time in the appellant's reply brief].)

the property. The note stated it was subject to section 2966.[3] Although section 2966 applies only to residential homes, Marmolejo alleged Kang and Lee induced the purchase of the property by agreeing to provide "additional notice . . . prior to any action being taken upon collection [of] the balloon [payment] provided the note was ever to be sold." The note expired in 2018, and Marmolejo asserted "Kang [and] Lee entered into a forbearance agreement . . . whereby the accruing interest would become part of the principal until the time the property was sold or loan was refinanced."

The SAC alleged that, on January 14, 2019, Culkin Construction transferred the property to Marmolejo as part of a marital dissolution settlement. Later, Kang and Lee sold the note to Fleet "as a non-performing loan subject to the conditions identified in the note and the forbearance agreement." Marmolejo claimed to be unaware of this sale.

Marmolejo alleged she did not receive a section 2966 notice, and thus, no default event could occur. The SAC alleged, "The interest which accrued became part of the principal, pursuant to the modification of the . . . note." Further, "[a]s an investor in[] the . . . [n]ote, F[leet] was not permitted to foreclose upon the

_____

[3] Section 2966, subdivision (a) states, "In a transaction regulated by this article, which includes a balloon payment note when the term for repayment is for a period in excess of one year, the holder of the note shall, not less than 90 nor more than 150 days before the balloon payment is due, deliver or mail by first-class mail . . . to the trustor, or his or her successor in interest, . . . a written notice" setting forth certain information, including "[t]he date on or before which the balloon payment . . . is required to be paid." (*Id.*, subd. (a)(2).)

interest only, but rather upon the entirety of the . . . interest and principal." (Italics and underscoring omitted.) "By the terms of the . . . [n]ote, a default in either interest or principal requires enforcement of the whole sum of the [p]rincipal and [i]nterest. The [p]rincipal and [i]nterest were inextricably connected. The failure to provide . . . [section ]2966 [notice] prohibit[ed] collection upon the interest[] separate from the principal."

Marmolejo also asserted the Fleet defendants did not comply with the notice provisions in section 2924b, subdivision (b) or (c), in that they did not mail the notice of default to Marmolejo within 10 days or one month of recording it. Nor did they provide the 90-day reinstatement period before the date of sale.[4] Marmolejo claimed the Fleet defendants recorded the notice of default on February 17, 2021, but it "was not mailed to the borrower until April 28, 2021," and the foreclosure sale occurred on June 10, 2021.

The SAC asserted Marmolejo received the notice of default on April 28, 2021, at which time she contacted Best "offering to pay upon the . . . [n]ote . . . and sought to take the loan out of default." She demanded an accounting, but none was provided. She disagreed that the sum due was $7,357.51. "However, [Marmolejo] stated that since she was refinancing, she would pay off the . . . [n]ote from the proceeds of the loan . . . but that the sums represented by B[est] did not appear to be accurate." In an email exchange (not in the record), Best allegedly represented to

---

[4] See sections 2924, subdivision (a)(2) [power of sale cannot be exercised until not less than three months has elapsed from the filing of the notice of default], 2924c, subdivision (b)(1) [no date of sale may be set until approximately 90 days from the date the notice of default may be recorded].

9

Marmolejo that it was unaware of her interest in the property, and after Marmolejo explained she was the legal owner, Best purportedly indicated there had been an "oversight" and that it had "failed to notify [Marmolejo]."

The SAC asserted that, on May 17 and June 2, 2021, Marmolejo informed the Fleet defendants that she had a loan approved through Sun Pacific Mortgage & Real Estate (Sun Pacific) and upon receipt of the wire instructions, she would pay off the entire note. Best allegedly did not provide Marmolejo with the wire instructions. On June 8, 2021, Best told Marmolejo that the payoff amount was $45,796.07. On June 9, 2021, Marmolejo represented she was ready to wire the funds, but asserted "F[leet] refused to accept a wire transfer payment." Marmolejo requested that the sale be postponed for one week to allow her to pay off the loan and clarify the amount due. The Fleet defendants did not postpone the sale.

On June 10, 2021, Inco bought the property at the trustee's sale for $126,000, the amount due under the first and second deeds of trust. Marmolejo claimed the sale was not a public auction but a private sale that Ostayan controlled, and that Fleet and Inco were Ostayan's alter egos. According to Marmolejo, the fair market value of the property was $850,000. The SAC concluded by alleging that the Fleet defendants' failure to adhere to the statutory requirements for nonjudicial foreclosure prejudiced Marmolejo.

b.     Demurrer and Motion to Strike

The Fleet defendants demurred to the first, second, third, seventh and eighth causes of action and moved to strike the fourth through sixth causes of action. The trial court granted the

10

motion to strike without leave to amend. It also sustained the demurrer in part and overruled it in part.

Following these rulings, Marmolejo's remaining causes of action were as follows: violation of nonjudicial foreclosure statutes against Fleet and Ostayan (first cause of action), wrongful foreclosure against Fleet, Ostayan, and Inco (second cause of action), quiet title against Inco (third cause of action), and unfair business practices against Fleet and Ostayan (seventh cause of action).

c.     Motion for Dismissal and Sanctions

On August 4, 2023, the Fleet defendants moved for dismissal and sanctions under Code of Civil Procedure section 128.7. They argued Marmolejo's first, second, and seventh causes of action were based on knowingly false allegations that Marmolejo had loan approval and funds ready to be wired and that defendants did not provide timely notice of default.

In support of the motion, the Fleet defendants filed Alvarado's declaration and the declaration of the Sun Pacific custodian of records along with business records that Sun Pacific produced in response to a subpoena. Alvarado declared that on February 19, 2021, he sent the notice of default via "certified or registered mail and first class mail" to the property as well as to the Downey address listed in the grant deed and second deed of trust. The Sun Pacific records included a June 17, 2021 email from a broker processing Marmolejo's loan application for $400,000. Thereafter, Sun Pacific's internal emails indicate that it identified several delinquencies on the property and required further information from Marmolejo. On July 16, 2021, having not received the necessary information, Sun Pacific closed Marmolejo's application.

11

On September 26, 2023, Marmolejo's attorney moved to be relieved as counsel.

On November 13, 2023, the court denied the motion for dismissal and sanctions without prejudice, observing the issues raised therein were more appropriately the subject of a summary judgment motion. The court granted Marmolejo's attorney's motion to be relieved as counsel.

## C. Summary Judgment

### 1. *The Fleet Defendants' Motion and Supporting Evidence*

On May 21, 2024, the Fleet defendants moved for summary judgment as to the remaining causes of action. In connection with the motion, the defendants requested that the court take judicial notice of (1) the grant deed recorded May 2, 2018, (2) the January 14, 2019 grant deed in favor of Marmolejo, (3) the notice of default recorded February 17, 2021, (4) the notice of trustee's sale recorded May 20, 2021, (5) the trustee's deed upon sale recorded June 22, 2021, (6) the notice of ruling for the demurrer to the FAC, and (7) the notice of ruling for the demurrer with motion to strike as to the SAC.

The Fleet defendants filed the declarations of Alvarado and the Sun Pacific custodian of records that they had filed with the Code of Civil Procedure section 128.7 sanctions motion. They also filed Ostayan's declaration. Ostayan declared that he was an officer of Fleet and Inco. Fleet, Inco, and Ostayan "each have and maintain separate bank accounts and Fleet's and Inco's business transactions, assets, and debts are also separately maintained from each other and from [Ostayan]." Ostayan acted on behalf of Fleet and Inco only in his capacity as an officer of each company. Ostayan further declared that Kang and Lee

12

transferred the promissory note to Fleet "as a non-performing loan." (Italics and boldface omitted.) On June 4, 2021, Best informed him that it provided a payoff demand to Marmolejo in response to her request. The payoff demand was good through June 9, 2021, but Marmolejo did not tender funds to Fleet, Inco, or Ostayan prior to the foreclosure sale. Inco purchased the property at the foreclosure sale. The opening bid was $49,068.15, multiple bids were made, and Inco made the final bid in the amount of $126,000. The sale was subject to a senior lien on the property that was delinquent.

The Fleet defendants argued summary judgment was proper because there were no triable issues that the Fleet defendants provided timely notice of default on February 19, 2021, as required under section 2924b, and that Marmolejo did not unconditionally tender the full amount of debt prior to the foreclosure sale. As to the first fact, they argued Alvarado's declaration demonstrated they complied with the notice requirements of section 2924b.

In connection with the second fact, the Fleet defendants argued the SAC alleged that Marmolejo could tender the funds because she had procured a loan from Sun Pacific. The Sun Pacific business records demonstrated Marmolejo never obtained a loan from Sun Pacific and, thus, did not have the means to tender payment. (See *FPCI RE-HAB 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1022 ["in the case of a trustor in default, an essential prerequisite to challenging the foreclosure sale is the ability to tender the amount of the indebtedness or cure the default"]; *Napue v. Gor-Mey West, Inc.* (1985) 175 Cal.App.3d 608, 621 ["A tender of payment is of no effect if the

13

offeror does not have the present ability to make the tender good"].)

The Fleet defendants argued that section 2966 did not apply to vacant land, and in any event the default did not involve a balloon payment but an installment payment, which is not subject to section 2966. They also argued that Inco and Fleet were not Ostayan's alter ego.

The Fleet defendants filed a separate statement identifying 37 undisputed material facts. In support of the facts, the separate statement cited the above-described evidence as well as admissions in the verified SAC.

### 2. *Marmolejo's Opposition*

Citing federal statutes, Marmolejo argued Fleet improperly failed to notify her that the deed and note had been assigned to Fleet. She further argued that in August 2018, there was an oral agreement to "wait to demand for [*sic*] the balloon . . . payment" and, thus, no further payments under the note were due or required. She claimed that a few lenders had pre-approved her for loans, but the Fleet defendants never provided her with wire instructions. Marmolejo asserted section 2966 applied because the note itself referred to that section.

Marmolejo did not file a response to the separate statement. To her unsworn opposition, Marmolejo attached certain exhibits, but she did not file a declaration or anything else authenticating the documents she submitted and did not file any declaration attesting to any facts within her personal knowledge.

### 3. *The Fleet Defendants' Reply*

In reply, the Fleet defendants identified procedural deficiencies in Marmolejo's papers and argued that her opposition

14

also failed on the merits because it did not demonstrate the existence of a triable issue of material fact.

   4.     *The Trial Court's Ruling*

Following oral argument, the court continued the summary judgment hearing to allow for additional briefing from the parties concerning: (1) the evidence of default, (2) the applicability of section 2966, and (3) the lack of tender.[5]

After considering the briefing and hearing further arguments, the court granted the summary judgment motion. The court observed Marmolejo did not provide a separate statement in opposition to the motion, but it went on to address the issues on the merits. It explained that notice under section 2966 was not required because the alleged default involved an installment payment (which is not covered by section 2966) as opposed to a balloon payment (which is subject to section 2966). Thus, the remaining issues as framed by the pleadings were: "(1) whether [Marmolejo] defaulted as stated in the notice of default, (2) whether the notice of default was property noticed, and (3) whether [Marmolejo] adequately tendered payment prior to foreclosure."

As to the first issue, the court found that the recorded notice of default stated it was based on Marmolejo's failure to pay $7,357.51 as of February 10, 2021. Based on the terms of the

---

[5] Marmolejo's appellate reply brief attaches two exhibits, including the trial court's tentative ruling at the initial summary judgment hearing on August 12, 2024, and purports to transcribe portions of the August 12, 2024 hearing. We do not consider these materials, in part because they are provided for the first time on reply. (See *Holmes v. Petrovich Development Co., LLC*, *supra*, 191 Cal.App.4th at p. 1064, fn. 2.)

15

note itself, Marmolejo agreed to make interest installment payments in the amount of 5 percent per annum. The note's acceleration clause allowed the note holder to declare the entire remaining interest and principal immediately due and payable upon default. Thus, the Fleet defendants established Marmolejo's failure to make installment payments breached the note and resulted in Marmolejo's default. In opposition, Marmolejo argued the note matured in August 2018, before the notice of default was filed, and, thus, the Fleet defendants could not unilaterally extend the loan, foreclose due to a failure to make installment payments after the note matured, or base their notice of default on installment payments instead of the balloon payment. The court observed, however, that Marmolejo did not provide any legal authority to support these arguments. The court concluded that the Fleet defendants' undisputed material facts established that Marmolejo failed to make a required interest installment payment and that they could seek the entire indebtedness pursuant to the acceleration clause.

As to the issue of notice, the court found the Fleet defendants complied with section 2924b, which required them to mail the notice of default within a month of recording it. The notice of default was recorded on February 17, 2021, and mailed only two days later, on February 19, 2021. Marmolejo failed to provide evidence disputing these facts.

With regard to the third issue of whether Marmolejo adequately tendered payment prior to foreclosure, the court observed that the Fleet defendants asserted as an undisputed fact in their separate statement that, on April 28, 2021, Marmolejo emailed Best with a request for pay-off information and that she intended to pay the entire amount due. On May 5,

16

2021, Best provided Marmolejo with a demand statement. On June 9, 2021, Marmolejo stated the funds were in escrow and ready to be wired. However, the evidence established that Marmolejo did not have such funds in escrow, and Marmolejo did not provide evidence disputing these facts.

On October 29, 2024, the court entered judgment in the Fleet defendants' favor. On October 30, 2024, the Fleet defendants filed notice of entry of judgment.[6] Marmolejo timely appealed.

## DISCUSSION

The trial court's grant of summary judgment was correct for one fundamental reason—the Fleet defendants submitted evidence to demonstrate Marmolejo could not establish her claims, and she failed to submit any admissible contrary evidence. The Fleet defendants' evidence showed, and Marmolejo never disputed, that she failed to make the installment payment at issue, and she therefore was in default. The defendants' evidence showed Marmolejo was sent all required notices prior to the sale, and she submitted no contrary evidence. Section 2966 was inapplicable because the default at issue involved a missed installment payment, and section 2966 covers only balloon payments. Lastly, the defendants' evidence showed Marmolejo did not have the financing to tender payment as she claimed, and she failed to contradict this showing with any admissible evidence.

---

[6] Marmolejo also filed a motion to amend the judgment on October 30, 2024, citing Code of Civil Procedure section 1008. The trial court denied that motion, and Marmolejo has not appealed from that denial.

17

**A.    Summary Judgment Framework and Standard of Review**

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)  A defendant seeking summary judgment has met the "burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action . . . cannot be established." (*Id.*, subd. (p)(2).)  Once the defendant has met that burden, the burden shifts to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action." (*Ibid.*; see also *Scalf v. D. B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1518.)  "An issue of fact can only be created by a conflict of evidence.  It is not created by 'speculation, conjecture, imagination or guess work.' " (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196.)  Nor is an issue of fact created by bare conclusions of law.  (*Hoover Community Hotel Development Corp. v. Thomson* (1985) 167 Cal.App.3d 1130, 1137.)

We review the trial court's summary judgment ruling de novo.  (*Santos v. Crenshaw Manufacturing, Inc.* (2020) 55 Cal.App.5th 39, 47.)  " '[A]lthough we use a de novo standard of review here, we do not transform into a trial court.' [Citation.] ' "On review of a summary judgment, the appellant has the burden of showing error, even if [s]he did not bear the burden in the trial court.  [Citation.]  . . . .  As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any

18

supporting authority.  In other words, review is limited to issues which have been adequately raised and briefed.' " ' " (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 379.)

"To meet this burden on an appeal from a grant of summary judgment, an appellant must 'direct the court to evidence that supports [her] arguments.' [Citation.]  '. . . It is not the court's duty to attempt to resurrect an appellant's case or comb through the record for evidentiary items to create a disputed issue of material fact.' [Citation.]  An appellant who fails to pinpoint the evidence in the record indicating the existence of triable issues of fact will be deemed to have waived any claim the trial court erred in granting summary judgment." (*Dinslage v. City and County of San Francisco*, *supra*, 5 Cal.App.5th at p. 379, italics omitted.)

"Pro. per. litigants are held to the same standards as attorneys." (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.)  "A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 985.)

**B.    Marmolejo's Failure to File a Separate Statement**

Marmolejo's failure to file a separate statement setting forth the facts she contended were disputed along with supporting evidence is alone fatal to her appeal.  A party opposing a summary judgment motion must file a separate statement that responds to each of the moving party's undisputed material facts, indicating if the opposing party agrees or disagrees that those facts are undisputed.  (Code Civ. Proc., § 437c, subd. (b)(3).)  If the opposing party disputes a fact, she

19

must state the nature of the dispute and provide sufficiently specific citations to evidence supporting her position. (Cal. Rules of Court, rule 3.1350(f)(2).) A party cannot rely on the allegations of their own pleading (even if verified) to make the evidentiary showing necessary for summary judgment. (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 720, fn. 7.) "Without at least a separate statement and evidence in the form of supporting affidavits or declarations, it is impossible to demonstrate the disputed facts." (*Lyons v. Security Pacific Nat. Bank* (1995) 40 Cal.App.4th 1001, 1006-1007; see Code Civ. Proc., § 437c, subd. (b)(3) [failure to provide a separate statement in opposition "may constitute a sufficient ground . . . for granting the motion"].)

Marmolejo argues she submitted a separate statement in opposition on September 23, 2024, as part of her supplemental opposition. Not so. Marmolejo submitted what she called a "separate declaration" that did not meet any of the essential requirements of a separate statement in opposition. It did not identify the Fleet defendants' material facts that Marmolejo disputed, state the nature of the dispute, and, most importantly, did not cite to any evidence in support of her opposition.

This lack of the required separate statement is sufficient in and of itself for us to affirm the grant of summary judgment.[7] Even if we overlook this failure and comb the record to attempt to

---

[7] We need not defer to the trial court's reasoning and may affirm the summary judgment if it is correct on any ground that the parties had an adequate opportunity to address in the trial court, regardless of the trial court's stated reasons. (*Martin v. Trustees of California State University* (2023) 97 Cal.App.5th 149, 161.)

20

identify evidence to support Marmolejo's arguments, as explained below, Marmolejo has failed to demonstrate error.

## C. Marmolejo Has Not Demonstrated the Trial Court Erred in Summarily Adjudicating the First Cause of Action for Violation of Nonjudicial Foreclosure Statutes

### 1. *General Legal Principles Regarding Nonjudicial Foreclosure*

"[S]ections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830.)  "The purposes of this comprehensive scheme are to provide the beneficiary with a quick, inexpensive, and efficient remedy against a defaulting trustor; to protect the trustor from the wrongful loss of the property; and to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." (Miller & Starr, *supra*, at § 13:222, fn. omitted.)  These statutes "reflect a carefully crafted balancing of the interests of beneficiaries, trustors, and trustees."  (*I. E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 288.)

The first step in the nonjudicial foreclosure process is the recordation of the notice of default and election to sell in the county recorder's office.  (Miller & Starr, *supra*, at § 13:224, citing § 2924.)  Such notice informs the trustor of the nature of the default so that the trustor has an opportunity to reinstate the secured obligation.  (Miller & Starr, *supra*, at § 13:224.)  The beneficiary "cannot assert any ground of default other than that stated in the notice."  (*Miller v. Cote* (1982) 127 Cal.App.3d 888,

894.)  The notice must specify the nature of each breach actually known to the beneficiary.  (§ 2924, subd. (a)(1)(C).)

Within 10 business days after the notice of default is recorded, a copy of the notice must be mailed by registered or certified mail to the trustor and all other persons who have requested notice.  (§ 2924b, subd. (b)(1).)  The notice "must be mailed to the address specified in the recorded deed of trust . . . and in the case of the trustor must be mailed to the last known address if different from the address specified in the recorded instrument."  (Miller & Starr, *supra*, at § 13:228, fn. omitted, citing § 2924b, subd. (b)(1).)  An additional copy of the notice must be sent to the trustor by first class mail, and the person who mails the notices must prepare an affidavit certifying the proper mailing has occurred.  (Miller & Starr, *supra*, at § 13:228.) "In the absence of fraud, the affidavit establishes a conclusive presumption that the notices were mailed as described."  (*Ibid.*, fn. omitted, citing § 2924b, subd. (e).)

Also, within one month following recordation of the notice of default, a copy must be sent by registered or certified mail to certain persons "as long as their identity and addresses are adequately shown by a document which imparts constructive notice of their interest and which was recorded prior to the recordation of the notice of default."  (Miller & Starr, *supra*, at § 13:228, fn. omitted.)  Section 2924b, subdivision (c)(1) specifies the notice is to be sent "provided the instrument as so recorded sets forth a mailing address that the county recorder shall use, as instructed within the instrument, for the return of the instrument after recording, and which address shall be the address used for the purposes of mailing notices herein."  The persons enumerated under section 2924b, subdivision (c) include

22

any successor in interest of the trustor by an instrument recorded prior to the notice of default.  (*Id.*, subd. (c)(2)(A).)

"At least three calendar months must elapse after the notice of default is recorded before the trustee can proceed with the notice of sale."  (Miller & Starr, *supra*, at § 13:242, fn. omitted; see §§ 2924, subd. (a)(2), 2924c, subd. (b)(1).)  "The notice of sale must be given at least 20 days before the date of the sale."  (Miller & Starr, *supra*, at § 13:243, fn. omitted; see § 2924b, subds. (b)(2), (c)(3).)

"A trustee's sale based on a statutorily deficient notice of default is invalid and may be set aside, but only if the trustor can make a sufficient showing of prejudice resulting from the error."  (Miller & Starr, *supra*, at § 13:225, fn. omitted.)

2. *Marmolejo Did Not Establish a Triable Issue as to Default*

The note required Marmolejo to pay interest installments, including on June 2, 2018.  The notice of default specified the loan was in default based on Marmolejo's failure to pay that installment.  Marmolejo never disputed that neither she nor Culkin Construction nor anyone else made this payment.  The verified SAC instead admitted the loan was "non-performing" (i.e., in default) and asserted that Marmolejo was excused from making the required payment.  Mindful that "the pleadings set the boundaries of the issues to be resolved at summary judgment" (*Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 648), it was undisputed that Marmolejo did not pay the June 2, 2018 interest installment.

Marmolejo contends there can be no default because neither Kang and Lee nor Fleet provided notice that the balloon payment was due pursuant to section 2966.  As we have

23

previously explained, section 2966 applies only to balloon payments on notes secured by a one to four family dwelling, not to installments payments on notes secured by vacant land. (See Miller & Starr, *supra*, at § 4:66.) Marmolejo does not dispute this point. She contends, however, that although section 2966 may not ordinarily apply to the note at issue, Kang and Lee contractually agreed to provide section 2966 notice nonetheless. Assuming that the Fleet defendants were contractually bound to provide section 2966 notice concerning the final balloon payment, Marmolejo—whose burden it is on appeal to demonstrate error— does not explain how the failure to provide her with such notice bears upon a default based on her failure to pay the interest installment. A failure to provide section 2966 notice in a timely manner would extend the due date for the final balloon payment. (Miller & Starr, *supra*, § 13:109.) But "even if the due date for the final payment is extended, . . . a failure to pay any installment payment during any period of extension [still] constitutes *an enforceable default* under the note." (*Ibid*., italics added and fn. omitted.) Thus, a lender may seek to foreclose based upon the borrower's failure to make an installment payment without seeking to enforce the balloon payment, as occurred here.

Marmolejo next argues that there could be no default because she entered into an oral forbearance agreement with Kang and Lee under which they would wait to collect any interest or principal payment until Marmolejo refinanced or sold the property. Even assuming such an agreement could be made orally, she submitted no evidence, such as a declaration, of any such agreement. In sum, Marmolejo has not carried her burden

to demonstrate a triable issue as to whether she was in default under the note.[8]

3. *Marmolejo Did Not Establish a Triable Issue as to the Notice of Default*

Marmolejo argues the Fleet defendants did not comply with section 2924b in that they did not mail the notice of default to her within the required timeframes.[9]

As described above, section 2924b, subdivisions (b)(1) and (c)(1) require that after recording the notice of default, the lender shall mail a copy of the notice of default to the trustor within 10 days and to the trustor's successor in interest within one month.

---

[8] At oral argument, Marmolejo stated the trial court found that there was a forbearance agreement and she was not in default. This misunderstanding appears to arise from her misinterpretation of the trial court's demurrer ruling. On demurrer, a court considers only the complaint's allegations and judicially noticeable facts to determine if the plaintiff fails to state a cause of action as a matter of law. (*Lane v. I.U.O.E. Stationary Engineers* (1989) 212 Cal.App.3d 164, 168.) It does not take evidence or make factual findings. Thus, here, in overruling the demurrer to the SAC in part, the trial court did not conclude there was a forbearance agreement and no default. It only decided the litigation on Marmolejo's allegations about those issues could continue past the demurrer stage. In contrast, at the summary judgment stage of the proceedings, Marmolejo was required to adduce admissible evidence in support of her claims.

[9] Marmolejo argues the Fleet defendants also violated section 2924b in failing to mail the notice of default within 45 or 60 days or recordation. However, she does not identify the statutory provisions that purportedly require such notice.

The address to be used for the trustor is "the address specified in the recorded deed of trust" or the trustor's "last known address if different from the address specified in the recorded instrument." (Miller & Starr, *supra*, at § 13:228, citing § 2924b, subd. (b)(1).) The trustor's successor in interest identified in a recorded instrument that imparts constructive knowledge of their interest in the property is to be informed "provided the instrument as so recorded sets forth a mailing address that the county recorder shall use, as instructed within the instrument, for the return of the instrument after recording, and which address shall be the address used for the purposes of mailing notices herein." (§ 2924b, subd. (c)(1); Miller & Starr, *supra*, at § 13:228.) Further, the notice of default must be provided to the trustor approximately 90 days before the notice of sale is issued. (§§ 2924, subd. (a)(2), 2924c, subd. (b)(1); Miller & Starr, *supra*, at § 13:242.) The notice of sale must be provided to the trustor or the trustor's successor in interest at least 20 days prior to the scheduled sale. (§ 2924b, subds. (b)(2), (c)(3).)

The Fleet defendants adduced evidence establishing a prima facie showing that they complied with these requirements. Alvarado declared that on February 19, 2021, he mailed the notice of default by "certified or registered mail and first class mail" to Culkin Construction and to "Janette M Corona" at the Downey address and to Culkin Construction at the property's address. The grant deed from Culkin Construction to Marmolejo listed only the Downey address as a mailing address. The notice of sale was recorded 90 days later, on May 20, 2021.

Marmolejo adduced no evidence disputing the Fleet defendants' showing. Instead, she cites Code of Civil Procedure section 437c, subdivision (e) and argues that the trial court

should have required evidence corroborating Alvardo's declaration. That subdivision states, in part, "summary judgment may be denied in the discretion of the court if the only proof of a material fact offered in support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to that fact." (Code Civ. Proc., § 437c, subd. (e).) However, balancing the competing interests of parties to a nonjudicial foreclosure, the Legislature has set a different standard for such cases and directed, "In the absence of fraud, the affidavit [from the person who mailed the notice of default pursuant to section 2924b, subdivisions (b) and (c)] shall establish a conclusive presumption of mailing." (§ 2924b, subd. (e).) Thus, the trial court here did not err by declining to exercise its discretion to demand further proof from defendants. Further, recitals in the trustee's deed upon sale are also evidence that the Fleet defendants complied with the statutory notice requirements. Section 2924, subdivision (c) states, "A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices . . . shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice." Here, the trustee's deed upon sale included such a recital.

Marmolejo adduced no evidence of fraud with regard to notice or otherwise rebutted the Fleet defendants' evidence.[10]

---

[10] Marmolejo did file a declaration signed under penalty of perjury stating that the notice of default "was sent" on April 28, 2021. This is not competent evidence as to when the notice was

27

Moreover, the nonjudicial foreclosure statutes "do not require actual receipt by a trustor of a notice of default or notice of sale. They simply mandate certain procedural requirements reasonably calculated to inform those who may be affected by a foreclosure sale and who have requested notice in the statutory manner that a default has occurred and a foreclosure sale is imminent." (*Lupertino v. Carbahal* (1973) 35 Cal.App.3d 742, 746-747.)

Marmolejo argues that to the extent the notice of default referred only to interest installments that were due, the notice of default was faulty because, by the terms of the note, the balloon payment was also due. The Fleet defendants had to identify all defaults "actually known" to them in the notice of default. (§ 2924, subd. (a)(1)(C).) Assuming arguendo that they knew that the balloon payment was also due, the law is clear that their failure to identify it as a source of default "shall not invalidate the notice of sale." (§ 2924, subd. (e).) Moreover, Marmolejo has not explained how she was prejudiced thereby. Fleet was " 'bound by [its] notice of default . . . [and] [could not] insist upon any grounds of default other than those stated in that notice.' " (*Anderson v. Heart Federal Sav. & Loan Assn.* (1989) 208 Cal.App.3d 202, 211.) Marmolejo was indisputably in default for the reasons stated in the notice of default, and those reasons alone were sufficient for a nonjudicial foreclosure.

---

sent as it is not based on personal knowledge and therefore speculative. (*Sinai Memorial Chapel v. Dudler*, *supra*, 231 Cal.App.3d at p. 196.)

Accordingly, Marmolejo has not demonstrated the existence of a triable issue relating to the Fleet defendants' compliance with the notice requirements of sections 2924, 2924b, and 2924c.

4. *Notice of Intent to Accelerate*

Marmolejo argues the Fleet defendants did not provide notice of their intent to accelerate the loan. Marmolejo did not raise this issue in her SAC, and we find no indication she raised it in her opposition to the summary judgment motion. Thus, we deem the issue forfeited. (*Zimmerman, Rosenfeld, Gersh & Leeds LLP v. Larson* (2005) 131 Cal.App.4th 1466, 1488.) Even if the issue was not forfeited, it is meritless. "It is not required that the creditor give any special or separate notice of an intent to accelerate before commencing judicial foreclosure proceedings; commencement of the foreclosure proceedings itself is sufficient notice of the acceleration. However, when the creditor commences foreclosure under the private power of sale, it is necessary that the election to accelerate be set forth in the notice of default specifically and affirmatively." (Miller & Starr, *supra*, § 13:132, fns. omitted.) Here, the notice of default affirmatively explained the acceleration clause was being invoked, stating Fleet "does hereby declare all sums secured [by the second deed of trust] thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby."

5. *Notice of Assignment of Deed of Trust and Note*

Marmolejo argues the Fleet defendants failed to notify her of Kang and Lee's assignment of the second deed of trust and note to Fleet. She contends they were required to do so under title 15 United States Code section 1602. However, that statute lists the definitions for the Truth in Lending Act (15 U.S.C.

29

§ 1601 et seq.), and does not refer to any required notices following an assignment of a deed of trust. Further, although title 15 United States Code section 1641(g) requires "the creditor that is the new owner or assignee of the debt" of a "mortgage loan" to notify the borrower of a transfer within 30 days, a " 'mortgage loan' " under that subsection is expressly defined as "any consumer credit transaction that is secured by the principal dwelling of a consumer." Marmolejo did not submit any evidence in opposition to the summary judgment motion that the property was her principal or primary dwelling. Accordingly, title 15 United States Code section 1641(g) is inapplicable.

6. *Notice of Substitution of Trustee*

Section 2934a, subdivision (b) states in part, "If the substitution [of trustee] is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary . . . shall mail notice of the substitution before or concurrently with the recording thereof, in the manner provided in [s]ection 2924b, to all persons to whom a copy of the notice of default would be required to be mailed by [s]ection 2924b."

Marmolejo claims that Fleet should have mailed notice of the substitution but did not. We disagree that Fleet was under such an obligation. The record evidence indicates the substitution of trustee and the notice of default each were recorded on February 17, 2021 at 8:00 a.m.—in other words, concurrently. Thus, under the plain language of section 2934a the Fleet defendants were not required to mail a copy of the substitution to Marmolejo. (Cf. *U. S. Hertz, Inc. v. Niobrara Farms* (1974) 41 Cal.App.3d 68, 85 [a substitution of trustee that was recorded one minute after a notice of default did not warrant setting aside the foreclosure sale].)

30

In sum, Marmolejo has not shown the existence of a triable issue relating to whether the Fleet defendants violated the nonjudicial foreclosure statutes.

**D. Marmolejo Has Not Demonstrated the Trial Court Erred in Summarily Adjudicating Her Causes of Action for Wrongful Foreclosure and Quiet Title**

A claim for wrongful foreclosure requires the plaintiff to prove "that the trustee has caused ' "an illegal, fraudulent, or wil[l]fully oppressive sale" ' under the power of sale in a deed of trust; the trustor or other party challenging the sale was prejudiced or harmed; and the trustor tendered the amount of the secured indebtedness or was excused from doing so." (*Reeder v. Specialized Loan Servicing LLC* (2020) 52 Cal.App.5th 795, 805.) As to a quiet title action, "A borrower may not . . . quiet title against a secured lender without first paying the outstanding debt on which the mortgage or deed of trust is based. [Citations.] The cloud on title remains until the debt is paid." (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86.)

The trial court determined Marmolejo's causes of action for wrongful foreclosure and quiet title failed because there was no triable issue that Marmolejo did not tender payment. Marmolejo does not challenge this finding on appeal and, thus, has not demonstrated the trial court erred in summarily adjudicating those causes of action against her. In any event, the defendants' evidence showed that Marmolejo did not in fact have the funds she claimed, and she submitted no contrary evidence.

31

## E. Marmolejo Has Not Demonstrated the Trial Court Erred in Summarily Adjudicating Her Cause of Action for Unfair Business Practices

Because Marmolejo's unfair business practices cause of action is derivative of her claims for violation of the nonjudicial foreclosure statutes and wrongful foreclosure, the trial court also did not err in summarily adjudicating this claim.

## F. Alter Ego

Because Marmolejo does not have any surviving claims against Fleet or Inco, whether either of them is Ostayan's alter ego is moot. (*Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988) 204 Cal.App.3d 1351, 1359 ["A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation"].)

### DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.          M. KIM, J.

32